cMD/668981                                                                          6121-292

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

KIRTI MEHTA, KEVAL MEHTA, APRIL
MEHTA, KISHAN MEHTA and KETAN
MEHTA,

               Plaintiffs,

     v.

VILLAGE OF BOLINGBROOK, an
ILLINOIS MUNICPAL CORPORATION,
THOMAS ROSS, in his individual capacity,
RICHARD BURDETT, in his individual
capacity, BRANT DUVALL, in his individual
capacity, THOMAS MCAULIFFE, in his
individual capacity, VINCE RADAKER, in his
individual capacity, ANDREW SRAGA, in his
individual capacity, and SEAN TALBOT, in
his individual capacity,

               Defendants.

Case No.  1:12-cv-06216

Hon. Matthew Kennelly

## DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendants, for their reply in support of their Motion for Summary Judgment, state:

### Introduction

Plaintiffs' Second Amended Complaint seeks recovery for alleged racial and religious

discrimination by Defendants against them under 42 U.S.C. §1983 (Count I), §3617 (Count II –

Fair Housing Act ("FHA")) and §1982 (Count III). To avoid summary judgment, Plaintiffs must

set forth evidence showing a genuine issue of material fact as to the essential elements of each

count. Plaintiffs fail to do so. Plaintiffs fail to set forth evidence to support their claims that any

Defendant acted with discriminatory intent or that Defendants' alleged actions produced a

discriminatory effect depriving them of their equal protection rights, thus defeating all of their

claims. They fail to provide any evidence that they were treated differently than similarly-situated non-Hindu or non-Indian American residents. As to their FHA claim, which is time-barred, they have not set forth any evidence of actionable interference with protected activities. Moreover, based on the evidence presented, it is clear that each individual Defendant is entitled to qualified immunity as it cannot be shown that any of them violated any Plaintiff's clearly established constitutional rights, and Bolingbrook is likewise entitled to judgment since Plaintiffs cannot demonstrate a policy or practice of discrimination by the Village.

In an effort to save their case, Plaintiffs' rely on a host of assertions and innuendo which are simply not substantiated by the facts in this case. Their statements of fact and arguments mischaracterize the very testimony they have given, and the affidavits produced at this eleventh hour are improper. Plaintiffs involved in allegedly discriminatory traffic stops testified that – in plain contradiction to the Second Amended Complaint – they did not believe any racial or religious bias was involved. The alleged failure to investigate crimes against Plaintiffs is not because the Bolingbrook police were trying to drive Plaintiffs from Bolingbrook, but because crimes where masked perpetrators shoot at a home (or where a shooting occurs at night with no eyewitnesses) are rarely solved, and because alleged interference with child visitation is treated by the Will County State's Attorney as a civil matter to be handled in family court. Finally, Plaintiffs cannot link Defendants Ross and Bolingbrook to any of the incidents, apart from Plaintiffs' mere accusation of a conspiracy. And still, Plaintiffs have failed to identify any non-Indian American or non-Hindu individuals who were treated in a different manner than Plaintiffs were under comparable circumstances.

The only thing that Plaintiffs' facts demonstrate is that the Mehta family has had a number of alleged encounters with the Bolingbrook Police Department, but none of them amount

to actionable claims of racial or religious harassment by Bolingbrook against the Mehtas. Quite literally, every alleged encounter with the police is deemed by Plaintiffs to be part of a vast conspiracy against the Mehtas. Despite heaping accusation after accusation of racial or religious animosity by the police, in the end, there is nothing presented by Plaintiffs to show that the individual Defendants, let alone Bolingbrook or Ross had anything to do with perpetuating a policy of discrimination against them or other Hindus or Indian Americans.

Plaintiffs cannot rest on a complete lack of evidence at the summary judgment stage. For the reasons set forth below, this Court should grant summary judgment in favor of Defendants on Plaintiffs' Second Amended Complaint.

## <u>Argument</u>

I. **Significant Parts of Plaintiffs' Rule 56.1(B)(3) Statement of Additional Facts and Proffered Declarations Should Be Stricken and Ignored.**

As set forth in Defendants' Response to Plaintiffs' Rule 56.1(B)(3) Statement of Additional Facts, Plaintiffs' Statement repeatedly violates Rule 56.1 by failing to set forth a "short and concise" statement of facts, including multiple facts in many statements. *See*, *Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000). Moreover, Plaintiffs mischaracterize their and Defendants' deposition testimony, and have filed Declarations which directly contradict the earlier testimony given by them in the case. These Declarations, the statements which reference them and the mischaracterized testimony should be stricken and ignored. *See*, *Michas v. Health Cost of Controls of Illinois*, 209 F.3d 687, 689 (7th Cir. 2000); and *Bank of Illinois v. Allied Signal Safety Restraint Systems*, 75 F.3d 1162, 1168-69 (7th Cir. 1996) (Parties cannot thwart the purposes of Rule 56 by creating "sham" issues of fact with affidavits that contradict their prior depositions. To do so would severely undercut the very purpose of summary judgment motions "to weed out unfounded claims, specious denials, and sham defenses."). More directly, given

these transgressions, the Court should strike those statements set forth by Plaintiffs, leaving them with nothing to substantiate their claims, and requiring the Court to grant summary judgment on behalf of Defendants. *See*, *Oates v. Discovery Zone*, 116 F.3d 1161, 1167 (7th Cir. 1997); and *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 577 (7th Cir. 2000).

## II.     Defendants are Entitled to Summary Judgment on Count I.

Plaintiffs do not set forth facts to support their claims that Defendants Bolingbrook, Ross, Radaker, McAuliffe, Burdett, and Duvall (the only Defendants named in Count I) deprived them of their equal protection rights, or that they were treated differently than similarly-situated non-Indian Americans and/or non-Hindu residents in the eight proffered incidents.

In order to prevail on a §1983 equal protection claim, Plaintiffs must prove Defendants acted with discriminatory intent and that Defendants' actions produced a discriminatory effect. *See*, *Chavez v. Illinois State Police*, 251 F.3d 612, 635-36 (7th Cir. 2001). Plaintiffs must provide evidence of both the intent and adverse effect. Plaintiffs must prove: (i) they are similarly situated to members of the unprotected class and (ii) that Plaintiffs were treated differently from members of the unprotected class. *See, McNabola v. Chicago Transit Authority*, 10 F.3d 501, 513 (7th Cir.1993). Specifically, in order to prove a discriminatory effect, Plaintiffs must either identify similarly situated individuals or statistical evidence demonstrating existence of discrimination, or Plaintiffs cannot maintain their equal protection claims against Defendants. *See*, *U.S. v. Armstrong* 517 U.S. 456, 469, 116 S.Ct. 1480 (1996); and *Farrar v. Grochowiak*, 2005 WL 1126540, *4-*5 (N.D. Ill. May 4, 2005).

### A.  Plaintiffs Have Presented No Evidence that the Alleged Actions by Defendants Were Motivated by Discriminatory Intent or Produced a Discriminatory Effect.

Plaintiffs still have provided no evidence whatsoever that Defendants were motivated by discriminatory intent. Moreover, Plaintiffs have provided no material evidence to allow a trier of

fact to conclude that the Defendants' actions were on account of Plaintiffs' religion and/or national origin. *See, Morgan v. SVT, LLC*, 724 F.3d 990, 997 (7th Cir. 2013); *see also, Muhammad v. Caterpillar*, 767 F.3d 694, 699 (7th Cir. 2014). Plaintiffs have not presented any direct evidence that the Defendants were motivated by a discriminatory intent, nor is there any circumstantial evidence that could support an inference of discrimination, as Plaintiffs cannot point to a single similarly-situated non-Indian American and/or non-Hindu person who was treated more favorably or even differently than Plaintiffs under comparable circumstances. Defendants' SOF ¶76. As explained in Defendants' motion, this is fatal to Plaintiffs' claims under either method of proof. *See*, *Morgan*, 724 F.3d at 995-98*; Farrar at *4-5.* Plaintiffs' failure to address this lack of evidence therefore dooms their claims against Defendants.

With regards to the specific incidents alleged in Count I:

1. **Non-Actionable Claims Before August 2010.** Plaintiffs concede that they cannot recover for incidents pre-dating the relevant limitations period (August 2010 for claims against Bolingbrook and Ross; and even later for the other Defendants), yet they seek to highlight these earlier alleged incidents almost exclusively in an attempt to demonstrate Defendants' discriminatory intent. As with the other alleged incidents, none involve other Indian Americans or Hindus, other than the Mehtas themselves. The incidents involve primarily unknown officers who are not Defendants in this case, and are therefore really irrelevant and immaterial to their claims. However, even more disturbing is that the Statements of Additional Facts mischaracterize the testimony given by the parties during their depositions, and in some instances, are manufactured through post-deposition Declarations which directly contradict earlier testimony. For example, nowhere in Keval's testimony does he state that he is actually harassed by Defendant Ross or that Ross called him a "sand cricket." (Resp. to Plaintiffs' SOAF,

¶2). In his deposition, Kishan actually testified "I can't think of exactly what he [unnamed officer referred to as "Mr. Clean"] said at what times," and that while he was referred to as "Hindu", he did not consider it to be a racial slur since he was Hindu. (Resp. to Plaintiffs' SOAF, ¶¶3-4, 6). In addition, April's deposition testimony makes no reference to any harassment or search of her by officers while working at the Beaconridge bar. (Resp. to Plaintiffs' SOAF, ¶9).

These several encounters claimed by the Mehtas before 2010, even if they occurred exactly as set forth in the Mehtas' Statement of Additional Facts, still do not evidence an intent to discriminate, and the Mehtas completely fail to present any evidence that the alleged racial and religious discrimination was perpetuated on other Indian Americans or Hindus in Bolingbrook to support their claim of discriminatory effect.

2.      **August 19, 2010 Shooting.** On August 19, 2010, there was a shooting in which an unknown assailant fired multiple bullets into the Plaintiffs' home. Keval and Kishan claim that the police subjected them and other guests, including non-Indian American and non-Hindus, to verbal abuse. Defendants' SOF ¶6. Accordingly, Plaintiffs do not dispute that Keval and Kishan were treated in exactly the same manner as non-Hindu/Indian American individuals.

Plaintiffs allege that Kishan was treated differently than non-Hindu/Indian American guests based on Kishan's allegation that Officer Robert Liazuk (a non-party) threatened to have his dog attack Kishan after Kishan spat on the ground behind his dog (Doc. #164 at ¶21), and Plaintiffs allege that Defendant McAuliffe failed to properly investigate the August 19, 2010 shooting (Doc. #164 at ¶22), but critically, this incident is only directed toward Defendants Ross and Bolingbrook. Doc. #140 at p. 8; and Doc. #164 at ¶51(a). As such, Plaintiffs must show at least some evidence that this specific incident was the result of a Bolingbrook policy effectuated by Ross. See *infra* at 22-25. They haven't and can't do so by pure speculation alone. Plaintiffs

have not presented any evidence whatsoever that any allegedly wrongful actions taken by Bolingbrook officers on August 19, 2010 or the ensuing investigation were pursuant to a policy of Bolingbrook to discriminate against them on the basis of race or religion, and there is no evidence that Ross had any involvement with the matter. Defendants' SOF ¶30.

Plaintiffs' claim that the shooting was not properly investigated is inaccurate. Plaintiffs do not explain how the investigation was deficient, much less that such deficiency was motivated by their race or religion. Defendants SOF ¶¶11-12. Plaintiffs' only complaint is that no lineup was conducted, but they don't dispute that Kishan was the only Plaintiff who was an eyewitness to the shooting (Defendants' SOF ¶9), and testified that he did not know the assailant, who wore a "bandana mask" that covered the bottom half of his face (Defendants' SOF ¶10; and Resp. to Plaintiffs' SOAF, ¶14). In addition, the Bolingbrook Police reports disclose that apart from the limited description of the shooter given by Kishan, "No further suspect information," was provided, and "the other subjects on the scene were unable to provide me with a description of the suspect." (Resp. to Plaintiffs' SOAF, ¶14). Ross testified that no lineup was conducted, "[b]ecause it is my information that no suspect could be identified, that the suspect was masked, unknown. So it would be futile to do a photo lineup."*Id.*

Finally, the Declaration of Courtney Love submitted by Plaintiffs suggesting that some un-identified officer laughed about the incident with a manager from Beaconridge, says nothing of when or what was said, or even what the parties were laughing about, and is therefore immaterial, and inadmissible hearsay. (Resp. to SOAF, ¶18). There is simply no material evidence to demonstrate that the police did not conduct an adequate investigation of the shooting, let alone that their investigation violated the Plaintiffs' equal protection rights.

As with all of their other claims, Plaintiffs have not identified a single similarly-situated

non-Hindu/Indian American comparator who was treated differently than they were, and their allegations that the failure to investigate the shooting was part of a Bolingbrook policy directed against their family is based on nothing but speculation. While Plaintiffs have alleged that Bolingbrook officers have used racial slurs, Keval stated that he was not aware of any officer using any slurs against him or Kishan during the entire incident. Defendants' SOF ¶ 20.

3.     **May 9, 2011 Shooting.** On May 9, 2011, an unknown assailant fired shots into Plaintiffs' home. Plaintiffs again allege that Bolingbrook failed to properly investigate the matter (Doc. #164 at ¶¶26, 28), but concede that no one was present at the house at the time of the incident, and only one Plaintiff, Keval, resided at the house at the time of that shooting. Defendants' SOF ¶¶21, 22.  While Plaintiffs again allege that Bolingbrook failed to properly investigate the May 2011 shooting (Doc. #164 at 28), the evidence does not in any way support that claim. It is undisputed that none of the Plaintiffs saw the face of the assailant who apparently wore a hooded sweatshirt (Defendants' SOF ¶24), and there was no eyewitness to the shooting. Defendants' SOF ¶ 25.  As such, like the 2010 shooting incident, a line-up would be futile.

While Plaintiffs contend that an individual was heard bragging about the May 2011 shooting incident, Plaintiffs mischaracterize the evidence suggesting as much, and the victim of the armed robbery perpetuated by Keval and Kishan was never deemed a suspect in the incident. (Response to SOAF, ¶¶23-24).  Plaintiffs complain that the bullets from the May 2011 shooting were not submitted to the State Police Crime Lab for testing (Defendants' SOF ¶27), but as Defendants Talbot and Ross explained, there was no other gun or recent incident to compare bullets, and any such comparison still would not have identified an offender or shooter, among other variables that go into determining whether it's necessary or even useful to submit bullets to the crime lab. Defendants' SOF ¶ 28; Resp. to SOAF, ¶¶19-21.  It would be worthless.  As with

the August 2010 shooting, this incident is alleged only against Defendants Ross and Bolingbrook (Doc. #140 at p. 8), but it is undisputed that Ross was not involved in the investigation (Defendants' SOF ¶23), and Plaintiffs have never identified a single similarly-situated comparator who was treated in a different manner than they were.

4.     **May 22, 2011 Child Visitation Interference.** Plaintiffs' claim relating to investigation of a child visitation interference complaint must be dismissed because there is no evidence that the assigned detective, much less Bolingbrook and Ross (the only Defendants to this claim) [Doc. # 164 at ¶ 51(c)], acted with any discriminatory intent, or that any persons were treated differently under similar circumstances. It is undisputed that Detective Talbot testified that complaints of interference with child visitation rights are not criminally prosecuted in Bolingbrook, but are sent to the State's Attorney, who generally refers them to the civil attorneys handling visitation issues in family court. Defendants' SOF ¶31; Resp. to SOAF, ¶26. Moreover, Talbot testified that due to his case load and fact that he never subsequently heard from Keval in regards to the case, the matter remained open for a year before eventually being referred to the state's attorney. Defendants' SOF ¶ 32; Resp. to SOAF, ¶28. Furthermore, it is undisputed that no visitation order was ever produced by Keval, and that there were other deficiencies with Keval's May 2011 visitation interference claim, including that no crime was committed, that Keval actually produced an order of protection against him as to any child visitation, and that despite being provided a letter advising him to contact the assigned detective with any additional information, he never produced the visitation order or contacted the assigned detective. Resp. to SOAF, ¶¶25, 28.  Finally, Ross had no involvement with the case (Defendants' SOF ¶34).

5.     **September 2010 Stop of Keval Mehta.**  It is undisputed that Plaintiffs have not identified any officers involved in the alleged September 2010 stop, despite Keval testifying to

9

being detained for an hour and a half. Defendants' SOF ¶35; Doc. #164 at ¶35. Plaintiffs'
assertion that based on an alleged missing document from a 2014 incident, it can be inferred that
the police destroyed documents from the alleged September 2010 stop is unfounded speculation
and not supported by any evidence. Quite simply, Plaintiffs have provided no evidence, and
cannot refute that there are no police records whatsoever indicating that Keval was ever stopped
around this time (Defendants' SOF ¶36), especially since such documents would have been
automatically generated if the stop had occurred. Defendants' SOF ¶75.  Again, there is no
evidence that Defendant Ross was involved in this alleged incident even if it had occurred.

     **6.**    **April 2011 Stop.** April testified that Officer Kinsella did nothing wrong and
should not be part of this lawsuit (Resp. to SOAF, ¶29), and he is not, since Plaintiffs' claims
against Kinsella have already been dismissed, and this claim is only directed against Defendants
Ross and Bolingbrook. Doc. #164 at ¶51(e). As to these Defendants, Plaintiffs still have never
identified any similarly-situated individuals who were treated differently than April, and there
has been no testimony linking Ross or a Bolingbrook policy to the incident. Defendants' SOF
¶¶38-40.

     **7.**    **Keval and Kishan 2011 Stop.** As with the September 2010 stop of Keval, there
is no evidence that this incident ever occurred other than Plaintiffs' speculation that Bolingbrook
destroyed such evidence. Defendants' SOF ¶¶ 42-44. Plaintiffs' own allegations and testimony
about the alleged incident reveal that Kishan cannot be certain when this supposed incident took
place, from sometime in 2010, to as late as June of 2011. Defendants' SOF ¶42; Resp. to SOAF,
¶30.  Plaintiffs offer no supporting testimony from Keval that such an incident took place. *Id.*
Kishan's own testimony does not support that Defendant Radaker asked him when his family
was going to move out of Bolingbrook. Resp. to Plaintiffs' SOAF, ¶5. Furthermore, Kishan's last

minute Declaration claiming to now remember these details omitted from his earlier deposition testimony should be stricken and ignored. See, *supra* at 3; *Bank of Illinois v. Allied Signal Safety Restraint Systems*, 75 F.3d 1162, 1168-69 (7th Cir. 1996). Plaintiffs' testimony, and lack of any evidence of such a stop, is fatal to their claim. More importantly, there is no evidence that this alleged June of 2011 incident – even if it did occur – was part of an official policy of Bolingbrook, or that Defendant Ross was involved in any way.

8.       **Ketan March 9, 2014 Stop and Seizure.** Plaintiffs' claims based on Kishan's stop on this date have already been dismissed by this Court because Kishan was on parole at the time from his prior armed robbery conviction. Doc. #140 at p. 6. To try to save their claim from being dismissed, Plaintiffs again rely on a late Declaration contradicting their testimony. As with Kishan's Declaration, Ketan's Declaration should also be stricken and ignored. See, *Bank of Illinois*, 75 F.3d at 1168-69. Moreover, Ketan testified that he did not believe that his March 9, 2014 stop resulted from his race or religion. Defendants' SOF ¶46. Plaintiffs' attempt to explain away Ketan's supposed misunderstanding of the straightforward question asked of him still concedes that he did not believe the stop itself was motivated by race or religion. *Id.*; Response to SOAF ¶36. Further, there is no evidence that Defendant Ross was involved, or the stop was part of any official discriminatory policy. Ketan did not even know who Defendant Ross was at the time of this stop, and Kishan believed the stop was a "random occurrence." Defendants' SOF ¶¶49-50. And again, Kishan's testimony does not support that Defendant Radaker asked him when his family was going to move out of Bolingbrook. Resp. to Plaintiffs' SOAF, ¶5. As with every other claim, Plaintiffs fail to identify any other individual treated differently under comparable circumstances.

Keval and Kishan admitted that the 2014 traffic stops were not racially motivated.

11

Plaintiffs' response identifying the rule that a plaintiff's belief of discrimination is not evidence sufficient to survive summary judgment misses the point. A plaintiff's admission that the defendants had a race-neutral reason for the allegedly offensive conduct is clearly relevant. See, *Webb v. Budz*, 480 F.Supp.2d 1050, 1057-59 (N.D. Ill. 2007). Plaintiffs' testimony that neither stop was motivated by race or religion concedes there was a valid reason for the stop, and renders it impossible for Plaintiffs to meet their burden under *McNabola* that it was pretextual.

9. **Kishan April 2014 Stop and Seizure.** Despite Plaintiffs' attempt to characterize Kishan's testimony to suggest that there was some racial or religious motive attached to the April 2014 stop because Kishan believed the police "aimed to get me and my family," Kishan testified that his treatment during this incident had nothing to do with his race or religion, and no slurs were used during this incident. Defendants' SOF ¶¶ 51-52. Furthermore, the testimony and video evidence from the dashboard camera make it clear that Kishan was not forced to expose himself during the search (Defendants' SOF ¶53), and that Kishan voluntarily pulled his sweatpants down to allow access to the pockets of his gym shorts. Defendants' SOF ¶¶54-56.

There is simply nothing improper about the stop or search of either Kishan or the driver, Anthony Wallers. Moreover, the stop undisputedly reveals that apart from Plaintiffs' continuing failure to identify any similarly-situated non-Hindu/Indian Americans who were treated differently, the individual driving the car on the day of that incident, Wallers, is white and not a Hindu. Defendants' SOF ¶ 57. In addition, it is undisputed that officers found a marijuana pipe in the vehicle while Kishan was on parole. Defendants' SOF ¶ 58. Finally, there is again nothing offered by Plaintiffs to even suggest that Defendant Ross has anything to do with this incident.

**B. Plaintiffs' Claims Fail Because Their Only Proffered Evidence of Discriminatory Effect is Faulty Statistical Evidence of Racial Discrimination in Bolingbrook.**

Plaintiffs fail to identify any non-Hindu/Indian American person in Bolingbrook treated differently in similar circumstances, but they claim that is not necessary. The Seventh Circuit has held that a plaintiff in a §1983 action must prove both discriminatory intent and discriminatory effect, the latter of which requires the plaintiffs prove they were treated differently than a similarly situated individual. *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 513-14 (7th Cir. 1993); *Greer v. Amesqua*, 212 F.3d 358, 370 (7th Cir. 2000); *Chavez v. Illinois State Police*, 251 F.3d 612, 635-36 (7th Cir. 2001).

Plaintiffs refer to *Farrar v. Grochowiak*, 2005 WL 1126540 (N.D. Ill. May 4, 2005), but there, the Court held "[t]o show a violation of the Equal Protection Clause, plaintiffs must prove that defendants' actions ***had a discriminatory effect*** and were motivated by a discriminatory purpose," *Id.,* quoting *Chavez*, 251 F.3d at 635-36 (emphasis added), and found the plaintiff there did not prove she was treated differently than a similarly situated person.

As the Seventh Circuit explained in *Chavez*, there are only two ways a plaintiff can prove discriminatory effect: first, a plaintiff can identify a similarly situated person in an unprotected class who was treated differently, or second, a plaintiff can use statistical evidence of discriminatory. *Chavez*, 251 F.3d at 635-36. Not only do Plaintiffs fail to identify any individual treated differently under similar circumstances, the evidence is clear that other non-Hindu/Indian Americans were treated similarly with respect to the 2010 shooting and April 2014 stop. Defendants' SOF ¶¶6, 57. Perhaps recognizing this, Plaintiffs rely heavily on the Illinois Traffic Stop Study ("Study") to try to show discriminatory effect. However, as set forth in Defendant Ross' testimony, the Study is based on inaccurate factual data and should therefore be rejected for lack of foundation.

Plaintiffs do not actually dispute Defendants' explanation of why the Study is inaccurate, but instead argue that Ross is not qualified to make that assertion, or at best, there is a question of fact as to whether the Study or Ross are correct, and a jury should decide the minority driving population of Bolingbrook. To the contrary, it is well established that a Court may take judicial notice with respect to the inaccuracy of Census data. *See*, *Chavez,* 251 F.3d at 644–645. This Court, like other courts in the Seventh Circuit, can and should take judicial notice of the methodology used by IDOT to determine the minority driving population, including correct minority population for Bolingbrook in 2010 and 2011, based on the more current and accurate 2010 Census data which was not reflected in the Study until 2012. *Id.*; *Perez v. City of Batavia*, No. 98 C 8226, 2004 WL 2967153, at *9 (N.D. Ill. Nov. 23, 2004).

As Plaintiffs note in their response, the Study for 2009 to 2011 lists an estimated minority driving population of 37.98%. In 2012, the Illinois Traffic Stop Study lists the estimated minority driving population in Bolingbrook as 54.63%. Defendants' SOF ¶63; Resp. to Plaintiff's SOF ¶38. In fact, the estimated minority driving population in Bolingbrook, as listed in the Illinois Traffic Stop Study, from 2012 through 2014, indicates a 54.63% minority driving population. *Id*. Common sense dictates that the minority driving population of Bolingbrook did not remain exactly 37.98% from 2005 through 2011, and suddenly, overnight, jump to 54.63% in 2012, and remains so through 2014. Moreover, the methodology used to create the Study reveals that 2010 Census data was not incorporated by IDOT into the Study until 2012. *Id*.

Defendant Ross' testimony that the percentage of minority driving population was "incorrect" for Bolingbrook in the years 2010 and 2011 is therefore accurate. In fact, in 2010, the estimated minority driving population in Bolingbrook was 54.63%, as reflected in the 2012 Study, since the 2012 study used 2010 census data as the benchmark for determining the

minority population. Resp. to Plaintiff's SOF ¶38. As noted in the 2012 study, the ratio of white-to-minority drivers being pulled over in Bolingbrook was exactly 1.0, in line with the percentage of stops involving minority motorists. *Id.*; Defendants' SOF ¶ 63. This ratio demonstrates that Bolingbrook was not pulling over an inordinate number of minorities as compared to white drivers during this time period. Inserting the correct 54.63% estimated minority driving population figure into the 2010 and 2011 Studies accurately reveals that the ratio of white-to-minority drivers being pulled over are likewise close to 1.0 during these years as well. It does not take a jury to perform simple math. This Court can take judicial notice of the Illinois legislature's law enacting the Illinois Traffic Stop Study, and the Northwestern University Center for Public Safety's study itself, including the respective 2000 and 2010 Census data compiled by the United Stated Government, to acknowledge that the information contained on the 2010 and 2011 Illinois Traffic Stop Studies was "incorrect" and should have reflected the change in population of Bolingbrook in 2010 (and for the decade preceding it) which is realized in the 2012 Study. This is not a question of fact for a jury to decide, but a legal issue for the Court. Moreover, based upon the corrected data used for 2010 and 2011, it is clear that Bolingbrook, as a matter of law, did not perpetuate a practice of disparate treatment based upon the statistical evidence proposed by Plaintiffs. The statistics therefore show that minority drivers are no more likely than white drivers to be stopped by the Bolingbrook police, and therefore, plaintiffs cannot rely on a statistical methodology to demonstrate discrimination in Bolingbrook.

### III. Defendants are Entitled to Summary Judgment on Count II.

Count II of Plaintiffs' Second Amended Complaint alleges that Defendants deprived Plaintiffs of their rights under the Fair Housing Act, 42 U.S.C. § 3617, through an alleged pattern of harassment and intimidation consisting of the eight specific incidents discussed above, and an

additional three incidents that this Court barred from inclusion in Plaintiffs' Count I because of timeliness issues. *See* Doc. 164 at ¶¶ 54-58. As with their claims under Count I, Plaintiffs still have presented no evidence whatsoever of any discriminatory intent by *any* Defendant, and Defendants are thus entitled to summary judgment on Count II as well.  Under §3617, the plaintiff must prove either that the defendants acted with discriminatory intent or that their actions produced a discriminatory effect. *See East-Miller v. Lake County Highway Dept.,* 421 F. 3d 558 (7th Cir. 2005).  Plaintiffs fail to do so.

**A.  Plaintiffs Have No Evidence of Either Discriminatory Intent or Effect.**

Plaintiffs assert that they need not identify any other non-Hindu/Indian American individuals residing in Bolingbrook who were treated differently than Plaintiffs under similar circumstances, but they concede that intentional discrimination is an essential element of a §3617 claim. *East-Miller*, 421 F. 3d at 563. Plaintiffs really do not contest the facts with respect to the three incidents identified in Count II, and their mere suspicion that Defendants acted on account of Plaintiffs' race or religion, without more, does not create a question of fact to survive summary judgment. *See Davis v. Wells Fargo Bank*, 685 F. Supp. 2d 838, 845-46 (N.D. Ill. 2010). Plaintiffs have provided no evidence of racially or religiously motivated discrimination by Defendants. The incidents in Count II also included in Count I are addressed *supra at pp.* 6-12, and the three additional incidents in Count II are addressed below.

**1.     August and September 2010 Kishan Incidents.** It is undisputed that Kishan could not remember the specific circumstances of these stops or their dates, including which officers were even involved. Defendants' SOF ¶64.  It is further undisputed that Bolingbrook has no record of any stop of Kishan during this timeframe besides his presence at the scene of the August 19, 2010 shooting. Defendants' SOF ¶65. Plaintiffs have presented nothing but mere speculation about this alleged incident, and therefore, the claim must be dismissed.

16

2.      **Keval September 25, 2010 Arrest.** Likewise, Plaintiffs have not presented any evidence of wrongdoing with respect to this alleged incident. For one, they did not depose Officer Johnson who is not a defendant to this case, and since this claim is directed solely against Defendants Ross and Bolingbrook, Keval's lack of any basis for alleging that Defendant Ross was ever aware of this incident, or that it was conducted pursuant to some Bolingbrook policy, is fatal to the claim. Defendants' SOF ¶ 67. Moreover, Keval continued to reside in Bolingbrook for over three years after this incident. Defendants' SOF ¶68. Plaintiffs have presented no evidence that the lone Defendants – Ross and Bolingbrook – have any involvement whatsoever.

3.      **August 31, 2011 Code Violation Notices.** Despite claiming that he had photos of the fence in sufficient repair and his grass well-kept, Kirti still has not produced any such photographs despite a request for them. Defendants' SOF ¶69. Plaintiffs have not otherwise presented any evidence to even suggest that these code violations were issued with discriminatory intent or effect, and therefore this claim too must fail.

### B. Plaintiffs Have Not Set Forth Evidence of Actionable Interference with Protected Activity.

To pursue a claim under § 3617, Plaintiffs must prove the defendants interfered with activity protected under the FHA, *i.e.*, the exercise or enjoyment of fair housing rights. *East-Miller*, 421 F.3d at 563. None of the incidents in Count II relate to the use of their property. Plaintiffs contend that they don't have to show that their home was actually made unavailable to prevail, but they must prove some nexus between the alleged incidents and their rights under the FHA. Plaintiffs fail to show how any of the complained of conduct and/or incidents violated their rights under the FHA. Moreover, even if Plaintiffs' allegations somehow related to their home or their ability to use or enjoy their home, their claims are still insufficient since the claims do not rise to the level of egregiousness. *Krieman v. Crystal Lake Apartments Ltd. Partnership*,

2006 WL 1519320 (N.D. Ill. May 31, 2006). Plaintiffs' conclusory assertion the incidents here do amount to such egregious behavior is mistaken from a comparison of this case and the examples provided in *Krieman*, including detonating explosives, burning a cross in plaintiff's yard, and breaking windows of plaintiff's home. *Krieman*, at *10. The complaints that Plaintiffs raise – that Kirti received a ticket for having overgrown grass or that Ketan was detained during a traffic stop – do not rise to this level.

### C. Plaintiffs' Claims Under Count II are Time-Barred.

Defendants are likewise entitled to summary judgment on Count II because it is now clear that most, if not all of their claims are time-barred. Plaintiffs' only response is that the claims against Ross and Bolingbrook should not be dismissed since these parties were timely brought into the suit in August of 2012, when the original complaint was filed. However, they offer no reason Count II is not time barred as to the other Defendants. Plaintiffs concede claims under the FHA are subject to a two year statute of limitations, *Soto v. City of West Chicago*, 2010 U.S. Dist. LEXIS 123195 (N. D. Ill. Nov. 19, 2010), and thus the claim is time barred as to all Defendants other than Ross and Bolingbrook.

However, based on Plaintiffs' alleged knowledge of claims of discrimination under either 42 U.S.C. § 3617 or 42 U.S.C. § 1982 two years' prior to even filing suit against Defendants Ross and Bolingbrook on August 7, 2012, or two years' before naming each other individual Defendants in those counts, all the claims should nonetheless be time-barred. *See* Doc. # 206 at pp. 2-3. Plaintiffs fail to address the fact that their own proffered evidence now shows that they should have known of their alleged claims well before August 7, 2010. Plaintiffs repeatedly testified that the supposed conspiracy of Bolingbrook to kick them out of the Beaconridge development began well before 2010 or that they did not know when it began (Defendants' SOF ¶¶70-74), with Kirti testifying his belief that this conspiracy began in 1996. Defendants' SOF ¶70. Plaintiffs have not

refuted that they filed a prior lawsuit against their homeowners association alleging that the association was engaged *with the Bolingbrook Police Department* in a conspiracy to remove them from Beaconridge. *See* Case No. 10-cv-2253, Doc. #1 at p. 7.

It is clear that some Plaintiffs believed as early as 1996 that Bolingbrook and its police were discriminating and harassing them and that, at the very latest in May 2010, Plaintiffs further believed Bolingbrook was interfering with their housing rights. Plaintiffs completely fail to address these facts, and simply rely on the non-timed barred §1983 actions to claim that their Count II and III claims likewise survive. Despite claims of discrimination under FHA and §1982 dating back decades, Plaintiffs failed to timely file within two years of these earlier actions, even though Plaintiffs clearly believed that actionable and injurious discriminatory acts were occurring. As such, the following incidents are time barred and cannot form a basis for Count II because they were not first asserted within two years of accruing: May 21, 2011, ¶57(c); September 2010, ¶57(d); August and September 2010 ¶57(e); September 25, 2010 ¶57(f); April 2011 ¶57(g); August 31, 2011 ¶57(h); and, June 2011 ¶57(i).

**IV.     Defendants are Entitled to Summary Judgment on Count III.**

Plaintiffs do not even bother to address dismissal of Count III, alleging that Defendants interfered with Plaintiffs' property rights on the basis of Plaintiffs' race, in violation of 42 U.S.C. § 1982, other than to lump it in with all their other claims in the hopes to get to a jury on this specious claim. The allegations in Count III are identical to those in Count II addressed *infra,* and should likewise be dismissed. Ultimately, for the same reasons addressed above, Plaintiffs cannot show that the Defendants had a racial *animus*, intended to discriminate against Plaintiffs, or deprived Plaintiffs of protected rights because of their race. *Whisby-Myers v. Kiekenapp*, 293 F. Supp.2d 845, 850 (N.D. Ill. 2003). Moreover, Plaintiffs' claims in Count II and III are

alternative forms of relief, and Plaintiffs can only recover under one claim or the other. Doc. #206 at p. 3. Because the specific allegations in Count III are identical with the same issues of timeliness and a complete lack of evidence of discriminatory intent, Defendants are entitled to summary judgment on Count III for all the reasons set forth in Section III, *supra*.

**V.      All Individual Defendants Should be Granted Qualified Immunity.**

Plaintiffs assert that the individual Defendants are not entitled to summary judgment based on qualified immunity because Defendants have not sufficiently explained how Plaintiffs asserted rights are not "clearly established".  However, as explained fully above as to each alleged incident, there is simply no evidence of any discriminatory intent or violation of known constitutional rights by any of the Defendants against the Plaintiffs. There is no evidence that Defendant Ross was involved in any of the alleged incidents. Defendants Burdett and McAuliffe are named as to the April 5, 2014 search of Kishan, however, Plaintiffs present no evidence whatsoever as to how Burdett or McAuliffe knowingly violated Kishan's rights.  Likewise, Defendants Radaker and Duvall are named as to the March 9, 2014 search of Ketan, however, Plaintiffs present no evidence whatsoever as to how either knowingly violated Ketan's rights.

Plaintiffs' argument that Defendants McAuliffe, Sraga and Talbot somehow discriminated in the provision of governmental services through their investigations of the two shootings and visitation rights complaint, or that Defendant Radaker during the alleged, and otherwise time-barred 2010 and 2011 searches of Kishan and Keval, specifically targeted Plaintiffs for improper searches and seizures is not borne out by the facts, as fully addressed in sections II and III above.  Plaintiffs don't even address the fact that they cannot demonstrate that any individual Defendant acted with sufficient malice to deny Plaintiffs their equal protection rights.  Plaintiffs didn't even depose Defendants Burdett, McAuliffe, Sraga, or Duvall to

ascertain what, if any malice these officers had against Plaintiffs. As such, there is no dispute of material fact that all individual Defendants are entitled to qualified immunity on all claims.

### VI. Bolingbrook is Entitled to Summary Judgment because Plaintiffs Have Presented No Evidence of Any Policy or Practice by Bolingbrook Directed Against Plaintiffs.

Plaintiffs make three arguments purportedly related to application of *Monell v. Dep't of Soc. Serv*s., 436 U.S. 658, 694 (1978) for the purpose of trying to defeat Bolingbrook's right to summary judgment since there is no evidence of any policy or practice by Bolingbrook directed against Plaintiffs. First, Plaintiffs concede a municipality can only be liable under Counts I and III under the <u>*Monell*</u> doctrine where an express policy causes a constitutional deprivation, a widespread practice is so permanent and well settled it constitutes the force of law, or a person with policymaking authority caused the constitutional deprivation, but contend that they need not show "disparate treatment" to survive summary judgment on the element of discriminatory intent as to Count II. While Plaintiffs contend that the Supreme Court has suggested that *Monell*'s prohibition does not apply to FHA claims, *Meyer v. Holley*, 537 U.S. 280, 287 (2003), involved a private actor, not a municipality. Plaintiffs concede that the Seventh Circuit has not directly addressed the issue, but the principle that a municipality is only liable for its authorized policies is just as relevant to the FHA as it is to § 1982 and 1983 actions.

Second, Plaintiffs argue that Bolingbrook overstates what is required to prove a "widespread practice" such that Bolingbrook cannot escape *Monell* liability, but it is Plaintiffs who drastically understate what is required. In fact, Plaintiffs must show a "widespread practice" that "is so permanent and well-settled that it has the force of law." *Looper Maint. Serv. Inc. v. City of Indianapolis*, 197 F.3d 908, 912-13 (7th Cir. 1999). In *Davis v. Carter*, 456 F.3d 686, 692-95 (7th Cir. 2006), cited by Plaintiffs, the plaintiff therein presented the defendants' testimony that the conduct at issue was common practice with respect to the plaintiff and non-

plaintiffs alike. Plaintiffs' § 1983 claim is based on ethnic and religious discrimination. This case involves several isolated incidents involving only one family relating to that family's unique circumstances. Even if those allegations showed a concerted effort to harass or discriminate against that family, which they do not, that would not be sufficient to establish that Bolingbrook had a formal policy of discriminating against an entire ethnic or religious group. *Harris v. Chicago Transit Auth.*, No. 14 C 9106, 2015 WL 5307721, at *6 (N.D. Ill. Sept. 10, 2015) (holding allegations that "may show a concerted effort by the CTA to harass or discriminate against" the plaintiff did not establish a formal policy permitting discrimination as to African Americans). Plaintiffs' §1983 claim against Bolingbrook must fail on this basis alone.

Plaintiffs are simply wrong that the mere fact that its claim is based on more than one alleged incident means its *Monell* claim can survive summary judgment. In contrast, courts in the Seventh Circuit have held that *several* isolated incidents involving the plaintiff is simply not enough to show a widespread practice. *Wilson v. Cook County*, 742 F.3d 775, 780 (7th Cir. 2014) ("Although this court has not adopted any bright-line rules for establishing what constitutes a widespread custom or practice, it is clear that a single incident—or even three incidents—do not suffice"); *O'Connor v. City of Chicago*, No. 87 C 10945, 1989 WL 15976, at *4 (N.D. Ill. Feb. 21, 1989) (holding allegations of six incidents of police brutality over a nine year span did not establish the existence of a municipal policy of inadequate training and supervision because "isolated incidents of police misconduct are inadequate to prove knowledge and acquiescence by a city policymaker in that kind of conduct").

Third, as an adjunct to their second argument, Plaintiffs argue there is sufficient evidence to permit a reasonable jury to impose supervisory liability on Ross, and thus Bolingbrook. "Section 1983 does not authorize 'supervisory liability.'" *Vining–El v. Evans*, 657 F.3d 591, 592

(7th Cir. 2011). Rather, a supervisor can only be liable if he is "personally responsible for the deprivation of the constitutional right," and that requires a showing that the supervisor "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012). Plaintiffs come nowhere close to meeting this heavy burden.

Plaintiffs allege that Ross called Keval a slur, and that Ross mocked Kirti for repeatedly filing lawsuits and asked him when he was moving. Setting aside the lack of evidentiary support for these allegations as set forth above, they provide no basis for a finding Ross is personally responsible for other individuals' completely unrelated conduct in the absence of actual evidence he knew of and/or was deliberately indifferent to that conduct. *See Trask v. Boyd*, No. 11 C 6907, 2012 WL 4754760, at *7 (N.D. Ill. Oct. 2, 2012) (holding allegations that a supervisor defendant failed to release a report did not render him liable for other defendants' false arrest).

Plaintiffs also speculate that Ross was aware of the existence of investigations they now claim are deficient because he received "notables" emails at the times of the incidents. However, Plaintiffs do not allege that Ross was even aware of the alleged deficiencies in each investigation, much less that Ross was personally responsible for the investigations. *Oliver v. Harner*, 2016 WL 1117084 (S.D. Ill. March 22, 2016) (holding a defendant could not be liable for determining whether an inmate is eligible for a religious dietary accommodation in the absence of evidence that he was responsible for that decision).

Plaintiffs present no evidence supporting their baseless *speculation* that Ross acted in concert with the other Defendants, or committed perjury, and do not create a *fact* issue for summary judgment. *See Trask v. Boyd*, 2012 WL 4754760, at *7. (holding conclusory allegations of conspiracy must be rejected even at the 12(b) stage); *Smith v. Hartmann*, 2014 WL

4912010, * 2 (N.D. Ill. Sep. 30, 2014) (holding an allegation that a defendant fostered a climate of excessive force was a *Monell* claim dressed up as a claim for personal liability and lacked necessary allegations of personal involvement).

Plaintiffs have simply failed to present any evidence that would support a finding of municipal liability against the Defendant Bolingbrook on any of their claims. Given the failure of Plaintiffs to demonstrate actionable constitution violations on any of the individual incidents, Bolingbrook should not be held liable for any of Plaintiffs' claims. Even if there were some actionable claims, there is nothing but Plaintiffs' admitted speculation that would support a finding that Bolingbrook, a municipal entity, would be liable. Likewise, Plaintiffs have failed to present any evidence as to how Bolingbrook or its officers treated other individuals, and Plaintiffs' allegations are solely particularized to their own experiences. This is insufficient to establish municipal liability, and therefore, Bolingbrook is entitled to summary judgment.

Respectfully submitted,

By:     /s/ Matthew J. Devereux

Attorney for Defendants
John M. O' Driscoll (Illinois ARDC No. 6237793) jodriscoll@tresslerllp.com
Matthew J. Devereux (Illinois ARDC No. 6236960) mdevereux@tresslerllp.com
Tressler LLP
233 S. Wacker Drive, 22nd Floor
Chicago, IL 60606
Telephone:  312.627.4000

## <u>Certificate of Service</u>

I hereby certify that on July 15, 2016, I electronically filed the **<u>Defendants' Reply in Support of Motion for Summary Judgment</u>** with the Clerk of the Court using the CM/ECF system which sent notification of such filing to attorneys of record through the Court's electronic filing system.

> Wendi E. Sloane
> Andrew E. Nieland
> BARACK FERRAZZANO KIRSCHBAUM & NAGELBERG LLP
> 200 W. Madison Street, Suite 3900
> Chicago, IL 60606

/s/ Matthew J. Devereux

Attorney for Defendants
John M. O' Driscoll (Illinois ARDC No. 6237793) jodriscoll@tresslerllp.com
Matthew J. Devereux (Illinois ARDC No. 6236960) mdevereux@tresslerllp.com
Tressler LLP
233 S. Wacker Drive, 22nd Floor
Chicago, IL 60606
Telephone:  312.627.4000